**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**GREGORY W.,**

        **Plaintiff,**

    **v.**                            **Civil Action 3:25–cv–00241**
                                     **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff Gregory W. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **SUSTAINS** Plaintiff's Statement of Errors (Doc. 12), **REVERSES** the Commissioner of Social Security's nondisability finding, and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

On August 30, 2023, Plaintiff protectively filed and applied for DIB, alleging disability beginning December 1, 2018, due to brain fog resulting from over 20 surgeries, missing a kidney, missing 15% portion of his lung, missing his left testicle, and bladder cancer. (R. at 204–10, 235). After his application was denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held a telephone hearing on February 13, 2025. (R. at 36–68). Ultimately, the ALJ denied benefits in a written decision on March 17, 2025. (R. at 15–35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–7).

Plaintiff then filed suit with this Court on July 14, 2025 (Doc. 1), and the Commissioner filed the administrative record on September 4, 2025 (Doc. 10). The matter has been briefed and is ripe for consideration. (Docs. 12, 13, 15).

### A.      The Administrative Record

In his opinion, the ALJ summarized and evaluated Plaintiff's statements to the agency, hearing testimony, and certain medical records and symptoms. (R. at 25–26). The ALJ also summarized and evaluated certain medical source opinions and prior administrative medical findings. (*Id.* at 27). Rather than repeat the summaries, the Court will focus on the evidence pertinent to Plaintiff's assigned errors below.

### B.      The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements through December 31, 2021, and has not engaged in substantial gainful activity during the period from his alleged onset date of December 1, 2018, through his last insured date of December 31, 2021. (R. at 21). The ALJ next determined that through the date last insured, Plaintiff suffered from the severe impairments of residuals of bladder cancer and a history of alcohol abuse. (*Id.*). The ALJ, however, found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R. at 23).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> Through the date last insured, [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following exceptions: No climbing of ladders, ropes, and scaffolds. No work around hazards such as unprotected heights or dangerous machinery.

(R. at 24).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely

consistent with the medical evidence and other evidence in the record . . . ." (R. at 26). The ALJ next determined that Plaintiff has no past relevant work. (R. at 27). Relying on the vocational expert's testimony, the ALJ concluded that, through the date last insured, Plaintiff would have been capable of performing other work in the national economy at the medium exertional level, such as a stores laborer, kitchen helper, or floor waxer, and at the light exertional level, such jobs as a cashier II, sales attendant, or housekeeping cleaner. (R. at 28–29). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from December 1, 2018, the alleged onset date, through December 31, 2021, the date last insured. (R. at 30).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

3

### III.    DISCUSSION

Plaintiff asserts five statements of error, but the Court need only address his second.  (Doc. 12 at 7).  In that error, Plaintiff challenges the ALJ's evaluation of Plaintiff's treatment provider, James Slaughenhaupt, D.O.  (*Id.* at 10–12).

A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.913(a)(1).  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1]  20 C.F.R. §§ 404.1513(a)(1)–(5), 416.920c(c)(1)–(5).  These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Indeed, the regulations require an ALJ to "explain how [she] considered the supportability and consistency

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

§ 404.1513(a)(2), (5).

factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [she] considered" the other factors. *Id.*

When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). In other words, this factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (quotation and emphasis omitted). But the ALJ does not need to use "any specific phrasing to comply with the applicable regulations." *Id.* (noting that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim" (internal quotation omitted)). At bottom, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).

The ALJ did not summarize Dr. Slaughenhaupt's opinion, so the Court does so briefly. Dr. Slaughenhaupt treated Plaintiff for 18 months. (R. at 778, 830–37, 842–48, 895–902, 906–12). In November 2024, Dr. Slaughenhaupt completed a form titled "Medical Assessment of Ability to do Work-Related Activities" in which he opined that since December 2021, Plaintiff has experienced "pain or fatigue that would impact his . . . ability to sustain or persist in activities during an eight–hour workday." (*Id.* at 778–80). Dr. Slaughenhaupt also opined that Plaintiff's impairments would cause him to be absent from work about once a month, and he would "require unscheduled bathroom breaks in addition to regularly scheduled breaks." (*Id.*).

5

The ALJ's entire evaluation of Dr. Slaughenhaupt's opinion is as follows:

> The undersigned is unpersuaded by the opinion of James F. Slaughenhaupt, D.O., as given in a Medical Assessment of Ability to do Work-Related Activities completed in November 2024 (Exhibit 4F). As the claimant's primary treatment provider, Dr. Slaughenhaupt could have keen and significant insight into the claimant's physical abilities and limitations. The medical record does not reflect any interactions between Dr. Slaughenhaupt and the claimant prior to April 2024, however (Exhibit 5F at 168), more than two years after the DLI, and he is therefore unable to provide any insight based on direct observation and treatment into the claimant's level of functioning during the relevant time period. With that being said, his statement that the claimant continues to experience pain supports the imposition of the exertional limitations noted above, although nothing in the record supports the expected level of absenteeism he proposed.

(R. at 27). Plaintiff asserts this evaluation is "devoid of an explained application of the . . . consistency factor[]." (Doc. 12 at 10). The Court agrees.

As noted above, a proper consistency analysis compares the medical opinion at issue to other record evidence. The ALJ's consideration of Dr. Slaughenhaupt's opinion does not include enough analysis to this end. At best, the ALJ attempts to address consistency by stating "nothing in the record supports the expected level of absenteeism [Dr. Slaughenhaupt] proposed." (R. at 27). The ALJ, however, provides no support for this conclusion, either in his discussion of Dr. Slaughenhaupt's conclusions or anywhere else in his opinion. *See, e.g.*, *Rachel B. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-471, 2022 WL 815295, at *4 (S.D. Ohio Mar. 16, 2022) ("Similarly, the ALJ's single conclusory statement that Dr. Aldoori's opinions "are not consistent with the record" does not pass muster. Providing such a perfunctory statement without citing to any evidence or explaining the alleged inconsistencies is insufficient under the mandatory new articulation requirement contained in 20 C.F.R. § 416.920c(b)(2)."); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered). While only "a minimum level of articulation is needed to provide sufficient rationale for a reviewing court," *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4650, 2022 WL 1793149,

at *6 (S.D. Ohio, June 2, 2022), *report and recommendation adopted*, No. 2:21-CV-4650, 2022 WL 2237057 (S.D. Ohio June 22, 2022), the regulations still "require that the ALJ provide a coherent explanation of his reasoning." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021) (quotation omitted). The ALJ's failure to provide analysis of, or even citations to, other record evidence that contradict Dr. Slaughenhaupt's expected level of Plaintiff's absenteeism does not allow the Court to determine whether the ALJ's opinion is supported by substantial evidence. *C.f. Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). Put simply, the ALJ failed to evaluate consistency in a way that the Court can understand. *Stacie B*, 2022 WL 1793149, at *7 ("When assessing consistency, . . . the ALJ must evaluate whether the opinion is of a piece with the entire record and then articulate the rationale for his or her conclusion.").

The Commissioner responds that the ALJ's summary of Plaintiff's surgeries and related scans is a sufficient consistency analysis (Doc. 13 at 10). It reads:

> The limitations noted above are based on the residual effects of [Plaintiff]'s bladder cancer, which is substantiated by the majority of the submitted medical records. In January 2012, John Sanico, M.D., reviewed CT scan results and noted an impression of an eccentric bladder wall area with low attenuation (Exhibit 1F at 187). Later that month, Robert A. Asthon, M.D., reviewed additional CT scan results and noted an impression of a lobulated enhancing bladder mass that was "suspicious for transitional cell carcinoma" (*Id.* at 182). In June 2013, Rishi Syal, M.D., reviewed new CT scan results and also noted an impression of a lobulated enhancing bladder mass (*Id.* at 178). The next month, Deborah K. Moore, M.D., performed a cystoscopy, pyelogram, ureteral stent placement, and transurethral bladder tumor resection, noting pre– and post–operative diagnoses of a left bladder lesion, and findings that the lesion "appears consistent with transitional cell carcinoma" (*Id.* at 240).

> The submitted medical records indicate only limited relevant treatment during the next five years, until July 2018 when Dr. Ashton reviewed new CT scan results and noted an impression of irregular thickening in the urinary bladder wall that "could be due to recurrent tumor," along with a mass in the distal left ureter (Exhibit 1F at 173–4). On multiple occasions between July 2018 and November 2022, Jonathan

> I. Hakim, M.D., and Robert Bruce Bracken, M.D., performed cystourethroscopies, ureteropyelograms, left ureteral stenting or stent exchanges, and biopsies, noting pre– and post–operative diagnoses of a history of recurrent low–grade transitional cell blader cancer and left ureteral masses (*Id.* at 215, 221, 227–8, 234). In September 2019, Peter C. Sze, M.D., reviewed a PET/CT tumor imaging study and noted an impression that "[f]indings may represent and inflammatory/infectious process. Malignancy may be a lower consideration in the differential diagnosis," and that there was heterogenous activity around a left ureter stent (*Id.* at 145). Between February 2020 and May 2021, Dr. Bracken performed numerous cystoscopies and pyelograms, along with a ureteral stent exchange and removal, and a transurethral bladder tumor resection and fulguration, noting diagnoses of bladder cancer or a malignant bladder neoplasm, a ureteral tumor, a ureteral stricture, and a urinary tract infection (Exhibits 2F at 14, 67, 140, 3F at 27, 31, 36). In July 2021, Sally Woods, M.D., reviewed CT scan results and noted an impression of a bladder mass (Exhibit 3F at 44).

(R. at 25). The passage sheds no light on how the ALJ considered Dr. Slaughenhaupt's opinion against the rest of the record. And it is unclear how the medical records undercut Dr. Slaughenhaupt's opinion. If anything, the records show Plaintiff's ongoing medical needs.

For certain, the ALJ could find that Dr. Slaughenhaupt's opinion is inconsistent with the record or not persuasive. But he must explain that finding in a way that permits meaningful review. *See Scott K. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-129, 2022 WL 4484603, at \*4 (S.D. Ohio Sept. 27, 2022) (noting the ALJ is obligated to "show [her] work") (citation and quotation omitted). As it stands, the Court cannot trace the ALJ's reasoning. In other words, the ALJ has not built "an accurate and logical bridge between the evidence and [her] conclusion." *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at \*5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020).

One final note. Though the Court declines to address the remaining errors, it notes that they, too, may be meritorious. The ALJ should consider the other alleged errors, as appropriate, on remand.

## IV.     CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 12) be

**SUSTAINED** and the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

IT IS SO ORDERED.


Date: May 15, 2026                          *s/ Kimberly A. Jolson*
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE